# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **STEVEN FRANK CAMERON,** ) <br> ) <br>    **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **UNITED STATES OF AMERICA,** ) <br> ) <br>    **Defendant.** ) | Civil Action Number <br> **2:17-cv-01364-AKK** |

## MEMORANDUM OPINION AND ORDER

Steven Cameron alleges that a physician at the Birmingham VA Medical Center ("the VA") misdiagnosed him with gout, when he in fact had bone spurs, in violation of the Federal Tort Claims Act ("FTCA"). Doc. 1. The Government has moved to dismiss, arguing that Cameron's claim is barred by the statute of limitations under 28 U.S.C. § 2401(b).[1] Doc. 15. After reading the briefs and considering the relevant case law, the court concludes that the Government's motion is due to be granted.

---

[1] The Government also argues that Alabama's statute of repose bars Cameron's suit. Doc. 15. The court does not address this argument because it finds that Cameron's complaint is due to be dismissed under § 2401(b). However, the court generally agrees with its sister courts who have rejected similar arguments. *See e.g.*, *McKinley v. United States*, No. 5:15-CV-101, 2015 WL 5842626, at *13 (M.D. Ga. Oct. 6, 2015) ("Congress intended to override state statutes of limitation and repose."); *Blau v. United States*, No. 8:12-CV-2669-T-26AEP, 2013 WL 704762, at *3 (M.D. Fla. Feb. 26, 2013) (states should not be "permitted to define the federal courts' subject matter jurisdiction over FTCA claims by enacting a statute of repose").

## I. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. FACTUAL BACKGROUND[2]

Cameron has suffered from sporadic foot pain for over thirty years. He apparently sought treatment in 1985, but was not diagnosed. Doc. 1-1 at 10. On October 15, 2012, even though she did not request blood work or x-rays to look for uric acid and made no physical contact with Cameron's left foot, a physician at the

---

[2] Where, as here, the plaintiff is unrepresented by counsel, the court liberally construes the pleadings. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Moreover, at the motion to dismiss stage, the allegations in the complaint are presumed to be accurate. *Iqbal*, 556 U.S. at 678.

VA, Monalisa Gnosh, diagnosed him with gout and prescribed Ibuprofen. Docs. 1 at 7; 1-1 at 8-9. Cameron returned multiple times to the VA complaining that he was "no longer able to walk normally in bare feet." Doc. 1 at 7. He also "requested x-rays to determine if Dr. Gnosh improperly diagnosed" him, but the VA denied these requests. Three years later, after obtaining private health insurance through a new employer, Cameron sought treatment from a private facility. Doc. 1 at 7-8. The physician who treated him, Dr. John Watkins, ordered x-rays and ruled out gout. *Id.* He referred Cameron for a second opinion to a physician at Southlake Orthopaedics, Dr. William Krauss, who subsequently diagnosed Cameron with bone spurs. Docs. 1 at 8, 11; 1-1 at 6. After unsuccessfully pursuing an administrative claim with the VA, Cameron filed this lawsuit, alleging negligent misdiagnosis. Doc. 1.

### III. ANALYSIS

The FTCA is a limited waiver of sovereign immunity for certain monetary claims against the United States. *See* 28 U.S.C. §§ 1346(b)(1), 2671–80. Such claims must be "presented in writing to the appropriate Federal agency within two years after such claim accrues." *Id.* at § 2401. In the context of medical malpractice, a claim "accrues" once the plaintiff is "armed with the facts about the harm done to him" such that he "can protect himself by seeking advice in the medical and legal community." *United States v. Kubrick*, 444 U.S. 111, 123

(1979). Put another way, the claim accrues "when the plaintiff is, or in the exercise of *reasonable* diligence should be, aware of both her injury and its connection with some act of the defendant." *Price v. United States*, 775 F.2d 1491, 1494 (11th Cir. 1985) (emphasis added). "It is not enough to trigger the statute of limitations that the claimant is aware of his injury if he is unaware of the act or omission which caused the injury," and "[m]ere dissatisfaction with the results of medical treatment" does not constitute knowledge of negligence. *Waits v. United States*, 611 F.2d 550, 551-53 (5th Cir. 1980).

Often, the line between "dissatisfaction with the results of medical treatment" and "knowledge of negligence" is hard to pin down. Generally, courts look to when the plaintiff had sufficient "'critical facts' indicating that he had been hurt and who had inflicted the injury." *McCullough v. United States*, 607 F.3d 1355, 1360 (11th Cir. 2010) (quoting *Kubrick,* 444 U.S. at 122). For example, where a hospital's failure to properly treat an infection culminated in the amputation of the plaintiff's leg, the claim did not accrue until the plaintiff's attorneys acquired his medical records. *Waits*, 611 F.2d at 551-53. Although the plaintiff already knew that his doctors had failed to treat the infection, the medical records revealed *why*: their failure to order the appropriate tests and prescribe the correct antibiotics. *Id.* In contrast, where a doctor mistakenly performed a hysterectomy on a pregnant woman, the woman's claim accrued as soon as the

doctors informed her that she was pregnant. *Price*, 775 F.2d at 1493-94. "Although [she] did not know exactly what mistake, or whose mistake, led the doctor to believe that she was not pregnant when in fact she was," she knew that "the doctor who performed the hysterectomy relied on information that she was not pregnant, and that this information was incorrect." *Id.* Thus, while the medical records may have shed light on the specific error—whether "the failure of the pregnancy test to yield an accurate result, or the failure of a person to record the result of the test accurately"—she already knew enough facts to infer negligence of some kind. *Id.*

Even where a plaintiff has the "critical facts" necessary to infer negligence and investigate her claim, however, the claim may not accrue if the plaintiff has "reasonably rel[ied] on the government's representations and assurances concerning [the plaintiff's] condition." *Burgess v. United States*, 744 F.2d 771, 775 (11th Cir. 1984). In such a case, the claim generally does not accrue until the plaintiff learns facts that would undermine those assurances. *See Radix v. United States*, No. 16-80669-CIV, 2017 WL 5665369, at *3-4 (S.D. Fla. Oct. 23, 2017) (holding that, even though the plaintiff had a copy of her CT scan that revealed the physicians' misdiagnosis, there was a genuine issue of material fact as to whether she reasonably relied on her physicians' assurances that the CT scan results were normal); *Coleman v. United States*, No. 4:05-CV-17 CDL, 2008 WL 4449586, at

*6 (M.D. Ga. Sept. 29, 2008) (denying motion to dismiss where the plaintiff's failure to fully investigate was allegedly caused by her doctors' reassurances).

Here, based on *McCullough v. United States*, 607 F.3d 1355, 1358 (11th Cir. 2010), the Government primarily contends that Cameron knew enough information to infer negligence well before he actually confirmed the misdiagnosis. Doc. 15. In *McCullough*, the plaintiff complained to the hospital of severe pain and swelling at the base of his neck a few days before his scheduled surgery to repair a hernia. *Id.* The physicians failed to order any diagnostic testing for his neck and instead performed the hernia surgery as planned. *Id.* Two days after the surgery, the plaintiff began experiencing paralysis in his limbs and visited the emergency room of a different hospital, where doctors discovered a spinal abscess, which, despite their efforts, caused quadriplegia. *Id.* The plaintiff sued more than two years later, arguing that his claim only accrued when his attorneys received his medical records. *Id.* The court disagreed, finding that the abscess was "in the exact location where he had previously complained about severe pain," and that the plaintiff was on notice of the possibility "that the VA doctors missed something." *Id.* As the court explained, the plaintiff "did not need his medical records to learn the 'critical facts' indicating that he had been hurt and who had inflicted the injury." *Id.*

The court agrees with the Government that Cameron's claim accrued when Dr. Gnosh misdiagnosed him on October 15, 2012. As the Government correctly notes, Cameron admits that "he knew he was unable to walk normally after that diagnosis." Doc. 15 at 8-9. Indeed, Cameron admits that he suspected Dr. Gnosh had misdiagnosed him. Doc. 1 at 7 (noting that Cameron requested x-rays from the VA to determine if Dr. Gnosh "improperly misdiagnosed gout"). To be sure, a claim does not accrue based on "a mere hunch, hint, suspicion, or rumor of a claim," but Cameron's suspicion did "give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *See McCullough*, 607 F.3d at 1361 (quoting *Kronisch v. United States,* 150 F.3d 112, 121 (2d Cir.1998)). Cameron failed to exercise such due diligence, even though Cameron admits that after his appointment with Dr. Gnosh he was "no longer able to walk normally in bare feet." Doc. 1 at 7. This fact "should have alerted him to the possibility that [Dr. Gnosh] missed something." *See McCullough*, 607 F.3d at 1360. Indeed, Cameron knew something was amiss because he returned to the VA multiple times and requested x-rays of his foot, which were denied. *See* doc. 1 at 7-8. Despite the denial of the x-rays, his suspicion, and his ongoing pain, Cameron did not seek treatment from another facility until almost three years later. *See* doc. 1 at 7-8. These facts, as pleaded in the complaint, are sufficient to establish that Cameron expressed more than "mere dissatisfaction" with his unsuccessful treatment and

was therefore on notice that he had a legal claim. *See Waits*, 611 F.2d at 551-53. Accordingly, even under the reading most favorable to Cameron, his claim accrued in November 2012.[3]

Moreover, Cameron does not plead that he reasonably relied on the VA's assurances about his condition. *See generally* doc. 1. To the contrary, he maintains that he doubted the diagnosis and "requested x-rays to determine if Dr. Gnosh [had] improperly diagnosed gout." Doc. 1 at 7. Based on the current complaint, Cameron's reliance, if any, on Dr. Gnosh's assurances, if any, is unreasonable in light of his ongoing pain and the VA's continuous refusal to order x-rays for his foot. *See Burgess*, 744 F.2d at 775; *Taylor v. United States*, No. 8:12-CV-518-T-33EAJ, 2013 WL 3153980, at *4 (M.D. Fla. June 19, 2013), *aff'd,* 554 F. App'x 835 (11th Cir. 2014) ("Taylor (in the exercise of reasonable diligence) should have been aware of both her injury and its connection with some act, or failure to act, by the Clinic, given that Taylor persistently sought treatment from the Clinic for vaginal bleeding and discharge, but the Clinic failed to diagnose her condition of having cervical cancer, including a large malignant tumor.").

Finally, Cameron argues in his response brief that the court should equitably toll his claim because "to his knowledge [he] had no other health

---

[3] Cameron does not say exactly when he returned to the VA, but the report on October 12, 2012 states that he was scheduled for a follow up in two weeks. Doc. 1-1 at 9.

insurance/medical options besides the [VA]" and thus had no way of discerning his misdiagnosis until he obtained private insurance through his employer. Doc. 19 at 3. The Eleventh Circuit has not yet decided whether FTCA claims are subject to equitable tolling. *See Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846–47 (11th Cir. 2013). Even so, equitable tolling is not warranted here because his "untimely filing could have been avoided with due diligence." *See id*. Although the court is sympathetic to the limited health care options available to our veterans, Cameron could have sought care from free or low cost clinics, or a hospital emergency room. Moreover, given his immediate doubts about Dr. Gnosh's diagnosis, he had more than enough time to file an administrative complaint. Therefore, because "the purpose of the limitations statute . . . is to require the reasonably diligent presentation of tort claims against the Government," *United States v. Kubrick*, 444 U.S. 111, 123 (1979), and Cameron has not demonstrated any extenuating circumstances that would excuse his exercise of due diligence, he is not entitled to equitable tolling.

## CONCLUSION AND ORDER

Consistent with this opinion, the Government's motion to dismiss, doc. 15, is **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.

**DONE** the 20th day of April, 2018.



**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE